Patrick H. Hicks, Bar No. 004632
phicks@littler.com
Kelsey E. Stegall, Bar No. 14279
kstegall@littler.com
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway, #300
Las Vegas, Nevada  89169.5937
Telephone:    702.862.8800
-    *Local Counsel*

Michael A. Oblon*
District of Columbia Bar No. 459363
moblon@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  202.879.3939

Keith Davis*
Texas State Bar No. 24037895
kbdavis@jonesday.com
JONES DAY
2727 North Harwood
Dallas, TX 75201
Telephone:  214.969.4528

H. Albert Liou*
Texas State Bar No. 24061608
aliou@jonesday.com
JONES DAY
717 Texas Ave. Suite 3300
Houston, TX 77002
Telephone:  832.239.3939
   *To apply for admission pro hac vice.

Attorneys for Plaintiff
ALLEGIANT TRAVEL COMPANY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ALLEGIANT TRAVEL COMPANY, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY** |
| v. | **JUDGMENT OF NON-INFRIGEMENT** |
| R2 SOLUTIONS LLC, | |
| Defendant. | |

- 1 -

**INTRODUCTION AND SUMMARY**

1.    Plaintiff Allegiant Travel Company ("Allegiant") brings this action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking declaratory judgment of non-infringement of United States Patent Nos. 7,698,329 ("the '329 Patent"); 8,190,610 (" the '610 Patent"); 8,307,029 ("the '029 Patent"); 8,527,623 ("the '623 Patent"); 9,558,175 ("the '175 Patent"); 10,176,272 ("the '272 Patent"); and 8,341,157 ("the '157 Patent") (collectively, the "Patents-in-Suit").

2.    Allegiant seeks this relief because Defendant R2 Solutions LLC ( "R2"), has accused Allegiant of infringing the Patents-in-Suit and has engaged in a patent enforcement campaign resulting in 22 lawsuits.  R2's actions have placed a cloud over Allegiant and its technology platforms.  Allegiant believes it is not infringing the Patents-in-Suit and therefore asks this Court to declare Allegiant's legal rights so that Allegiant may be granted relief from the uncertainty regarding its rights caused by Defendant.

**PARTIES**

3.    Plaintiff Allegiant is a Nevada corporation having a principal place of business at 1201 North Town Center Drive, Las Vegas, Nevada 89144.  Founded in 1997, Allegiant provides travel and leisure services to under-served cities in the United States.  Allegiant operates a low-cost passenger airline marketed primarily to leisure travelers in under-served cities.  Allegiant also provides booking for certain third party travel products such as hotel rooms and ground transportation via Allegiant's website, www.allegiantair.com.

4.    Allegiant employs over 3,800 employees, including department of Information Technology (IT) employees who reside or work in Nevada.  Allegiant's Las Vegas offices are also the headquarters for Allegiant's corporate operations, including the operation, development, and maintenance of Allegiant's website and information technology systems.  Allegiant's maintenance department is also headquartered in Las Vegas, where Allegiant's technicians maintain its aircraft

fleet via Allegiant's Federal Aviation Administration approved maintenance program.

5.     Defendant R2 Solutions LLC ("R2") is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 6136 Frisco Square Blvd., Suite 400, Frisco, Texas, 75034.  On information and belief, R2 has no employees and conducts no business operations other than filing patent lawsuits and entering agreements to settle patent lawsuits and/or license patents in return for a fully-paid upfront fee.

6.     R2 is a wholly-owned subsidiary of Acacia Research Corporation, a Delaware corporation.  Acacia Research Corporation also wholly owns Acacia Research Group LLC, a Texas limited liability company that also has a principal place of business at 6136 Frisco Square Blvd. Suite 400, Frisco, TX 75034.  On information and belief, Acacia Research Corporation and Acacia Research Group LLC conduct no business operations other than creating subsidiary companies that file patent lawsuits and enter agreements to settle patent lawsuits and/or license patents in return for a fully-paid upfront fee.

7.     Evan W. Woolley, who has identified himself as Vice President of Licensing at Acacia Research Group LLC, and whose business address is 4 Park Plaza, Suite 550, Irvine, California, 92614, has on at least several occasions contacted Allegiant in his capacity as an agent of R2, as described in more detail below.  On information and belief, Mr. Woolley has communicated with various other potential licensees of R2's patents in his capacity as an agent of R2.

**JURISDICTION AND VENUE**

8.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

9.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

10.     This Court has personal jurisdiction over the parties because R2 has consciously and

purposefully directed its patent enforcement activities at this Judicial District, including by contacting Allegiant's officers and employees in this District on numerous occasions over the course of a year to propose that Allegiant enter into a license due to its alleged infringement, as well as entering into a nondisclosure agreement with Allegiant, a Nevada corporation.  R2 is subject to personal jurisdiction because it has established the requisite minimum contacts with this District, including by deliberately directing its efforts in enforcing the Patents-in-Suit at Nevada.

11.      Venue in this Judicial District is proper under 28 U.S.C. §§ 1391(b) and (c) because R2 is subject to personal jurisdiction in this District, and because a substantial part of the events giving rise to Allegiant's claims occurred in this District.

**A.      Defendant has established extensive contacts with this District by directing its licensing and enforcement efforts with respect to the Patents-in-Suit at this District.**

12.      Over the past year, Defendant R2 has consciously and deliberately directed written and oral communications to Allegiant and its officers and employees in this District regarding the licensing and enforcement of the Patents-in-Suit, and has also entered into an agreement with Allegiant, a Nevada corporation, relating to the licensing of the Patents-in-Suit.

13.      On June 1, 2021, Allegiant's CEO Maurice Gallagher, a resident of Nevada, was contacted via letter by Evan W. Woolley, vice president of licensing for Acacia Research Group LLC.  In the letter Mr. Woolley offered Allegiant a license to R2 Solutions' portfolio of patents that was formerly owned by Yahoo! Inc.

14.      At that time, R2 had already begun an extensive patent enforcement campaign relating to its Yahoo! portfolio of patents, filing ten patent infringement lawsuits between January 29, 2021 and June 1, 2021, against a myriad of defendants in different industries.  The defendants sued by R2 included Workday, Inc., Target Corporation, Walmart Inc., Deezer SA, Samsung Electronics America, Inc., Fidelity Brokerage Services LLC, The Charles Schwab Corporation, JPMorgan Chase & Co., Roku, Inc., and iHeartMedia, Inc.

15.     Each of the lawsuits alleged infringement of patents formerly owned by Yahoo! Inc. In each of the lawsuits, R2 touted the strength of its portfolio of Yahoo! patents.

16.     For example, the lawsuits against Target Corporation, Walmart, Inc., Deezer, S.A. Roku, Inc. and iHeartMedia, Inc. alleged that search functionality relating to those companies' websites or music applications infringed the '329 patent.

17.     The lawsuits against Workday, Inc., Target Corporation, Walmart, Inc., Deezer, S.A., Samsung Electronics America, Inc., Fidelity Brokerage Services LLC, The Charles Schwab Corporation, JPMorgan Chase & Co., Roku, Inc. and iHeartMedia, Inc. alleged that those companies' data analytics platforms, including through their use of Apache Hadoop with MapReduce, infringed the '610 patent.  Apache Hadoop is an open source framework for managing big data sets that is utilized by many different companies across multiple industries.

18.     The lawsuit against Samsung Electronics America, Inc. alleged that its Samsung SmartThings technology infringed the '029 patent.

19.     The lawsuits against Workday, Inc., Target Corporation, Walmart, Inc., Deezer, S.A., Roku, Inc. and iHeartMedia, Inc. alleged that search functionality relating to those companies' websites or music applications infringed the '157 patent.

20.     On October 18, 2021, Mr. Woolley emailed Mr. Gallagher to follow up on R2's license offer.  Mr. Woolley's email referenced his June 1, 2021 letter "offering a broad license to the Yahoo! patent portfolio."  A true and correct copy of this email is attached hereto as Exhibit A. Mr. Woolley reported to Mr. Gallagher that "[s]ince the last correspondence with you, R2 Solutions has licensed many companies through negotiated deals at our discounted royalty rates, and has resolved several lawsuits with companies including Samsung, Workday, and Fidelity, to name a few."  Ex. A at 8.

21.     One week later, on October 25, 2021, Mr. Woolley again contacted Mr. Gallagher for a call to discuss, among other things, "licensing options for Allegiant Air."  Ex. A at 7.  On the

same day, Mr. Gallagher forwarded the email from Mr. Woolley to Laura Overton, Allegiant's General Counsel and Vice President of Legal Affairs, who is also a resident of Nevada.  Ex. A at 7.

22.    Later that day, Ms. Overton responded to Mr. Woolley's email, asking Mr. Woolley to "forward any future correspondence to Don Niles, [Allegiant's] external intellectual property counsel."  Ex. A at 7.

23.    On the same day, Mr. Woolley responded by email to both Ms. Overton and Mr. Niles, attaching a draft of a "mutually beneficial Non-Disclosure Agreement."  Ex. A at 6. According to Mr. Woolley, "[t]he NDA will enable us to share more information about the portfolio, applicability to Allegiant, and licensing options."  Ex. A at 6.  The draft NDA was drafted to be entered between R2 Solutions LLC, a Texas limited liability company, and Allegiant Travel Company, a Nevada corporation.

24.    On October 27, 2021, Mr. Niles sent an email to Mr. Woolley, copying Ms. Overton, and returning a copy of the NDA that was signed on behalf of Allegiant.  In his email, Mr. Niles stated: "The only issue we have with the NDA was the Governing Law provision (formerly paragraph 10) which we deleted.  If acceptable, please have R2 Solutions execute and return a copy to us."  Ex. A at 6.

25.    On the same day, Mr. Woolley sent an email to Mr. Niles and Ms. Overton, stating, "We would prefer the certainty of having the governing law set out in the NDA.  In the attached redline we propose New York as a neutral jurisdiction.  We are comfortable with California as well. Please let us know if either of those are acceptable to Allegiant."  Ex. A at 6.  On information and belief, R2 was aware that if the NDA did not contain a governing law clause, a dispute under agreement could be found to be governed by Nevada law.

26.    On October 28, 2021, Mr. Niles responded, stating, "The Governing Law provision in the NDA seems to undercut the status quo ante protections of the NDA.  Allegiant would prefer to simply not have this provision for this reason."  Ex. A at 5.

27.     Between October 28, 2021, and November 29, 2021, Mr. Woolley and Mr. Niles exchanged nine more emails about the draft NDA's governing law provision, copying Ms. Overton. Mr. Niles insisted either on the law of Nevada as the governing law, or proceeding with the NDA without a governing law provision.  On December 6, 2021, Mr. Woolley finally agreed and sent an email to Mr. Niles and Ms. Overton, attaching a "fully executed NDA between Allegiant and R2 Solutions." Ex. A at 1.  A true and correct copy of the executed NDA is attached as Exhibit B.  The stated purpose of the NDA was for the parties to enter into "licensing negotiations, during which either Party may disclose certain Confidential Information with the other Party."

28.     Around January 6, 2022, Mr. Woolley commenced a phone call with Mr. Niles and Ms. Overton to discuss R2's patents, after which he provided claim charts mapping Allegiant's technologies as infringing the claims of the '329 patent, the '610 patent, the '029 patent, the '623 patent, and the '175 patent.

29.     After not receiving an immediate response from Allegiant, Mr. Woolley sent follow-up emails to Mr. Niles and Ms. Overton on January 12, 2022, and again on January 21, 2022.  Mr. Woolley, Ms. Overton, and Mr. Niles then spoke on another conference call on February 16, 2022, about R2's licensing proposal.  Mr. Woolley followed up two more times on March 7, 2022 and March 21, 2022, via emails to Mr. Niles and Ms. Overton.

30.     On April 29, 2022, Ms. Overton sent an email to Mr. Woolley explaining that Allegiant did not believe it infringed the '329 patent, the '610 patent, the '029 patent, the '623 patent, and the '175 patent.  Ms. Overton also asked Mr. Woolley to identify what was confidential about R2's claim charts.

31.     Mr. Woolley responded to Ms. Overton by email on the same day, stating that the confidential information in R2's claim charts consisted of its mapping of the patent claims onto Allegiant's technologies.

32.     On May 12, 2022, Mr. Woolley sent an email to Ms. Overton, disagreeing with

Allegiant's positions in Ms. Overton's April 29, 2022 email.  Mr. Woolley attached new claim charts mapping Allegiant's technologies as infringing the '272 patent and the '157 patent.  After not receiving a response, Mr. Woolley sent another email to Ms. Overton and Ms. Niles on May 19, 2022 to follow up.

33.    By this time, R2 has expanded its patent enforcement campaign significantly. Subsequent to June 1, 2021, R2 filed twelve additional patent infringement lawsuits against companies in various industries.  The defendants in those lawsuits included Expedia Group, Inc., Roku, Inc., Redfin Corporation, Agoda Company Pte. Ltd., Booking.com Transport Limited, Booking.com BV, State Farm Mutual Automobile Insurance Company, FedEx Corporate Services, Inc., Citigroup Inc., Hilton Worldwide Holdings Inc., CVS Health Corporation, and American Airlines, Inc.  The accused patents against these defendants included the '329 patent, the '610 patent, and the '157 patent.

34.    For example, the lawsuits against Expedia Group, Inc., Redfin Corporation, Agoda Company Pte. Ltd., Booking.com Transport Limited, Booking.com BV, State Farm Mutual Automobile Insurance Company, FedEx Corporate Services, Inc., Citigroup Inc., Hilton Worldwide Holdings Inc., CVS Health Corporation, and American Airlines, Inc. alleged that search functionality relating to those companies' websites or mobile applications infringed the '329 patent.

35.    The lawsuits against Expedia Group, Inc., Roku Corporation, Redfin Corporation, Agoda Company Pte. Ltd., Booking.com Transport Limited, Booking.com BV, State Farm Mutual Automobile Insurance Company, FedEx Corporate Services, Inc., Citigroup Inc., Hilton Worldwide Holdings Inc., CVS Health Corporation, and American Airlines, Inc. alleged that those companies' data analytics platforms infringed the '610 patent.

36.    The lawsuits against Expedia Group, Inc., Redfin Corporation, Agoda Company Pte. Ltd., Booking.com Transport Limited, Booking.com BV, FedEx Corporate Services, Inc., Citigroup Inc., Hilton Worldwide Holdings Inc., CVS Health Corporation, and American Airlines, Inc.

alleged that search functionality relating to those companies' websites or mobile applications infringed the '157 patent.

**B.    A real and immediate controversy exists between Allegiant and R2.**

37.    R2's correspondence to Allegiant and its numerous patent lawsuits against other companies has placed Allegiant in reasonable apprehension of a lawsuit against Allegiant regarding the alleged infringement of R2's patents.

38.    Through its communications Allegiant's officers, employees, and lawyers described above, as well as its extensive patent enforcement campaign against various companies implicating their websites and music applications with search functionality, mobile applications, data analytics platforms, and other information technology platforms, R2 has created a real and immediate controversy between Allegiant and R2 regarding the alleged infringement of R2's patents by Allegiant's technologies.  Allegiant risks a lawsuit by continuing to use its technologies, including its www.allegiantair.com website, mobile application, and other information technology platforms.

39.    R2's actions have thus created a substantial controversy of sufficient immediacy and reality regarding Allegiant's use of its technologies to warrant the issuance of a declaratory judgment of non-infringement.

**COUNT I: NON-INFRINGEMENT OF THE '329 PATENT**

40.    Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 39 as though fully set forth herein.

41.    A true and correct copy of the '329 patent is attached hereto as Exhibit C.  The '329 patent is entitled "Method for Improving Quality of Search Results by Avoiding Indexing Sections of Pages."  It issued on April 13, 2010, from an application filed on January 10, 2007.  Priyank S. Garg, Amit J. Basu, and Timothy M. Converse are the named inventors.  The '329 patent contains 14 claims reciting apparatus and methods for ranking a plurality of documents recalled by a search engine for a query.  On information and belief, the '329 patent is assigned to R2.

42. Allegiant, through its systems, products, and processes, including at least the www.allegiantair.com website, is not infringing any claim of the '329 patent.

43. For example, claim 1 of the '329 patent reads:

1. A method, comprising:

ranking a plurality of documents recalled by a search engine for a query;

wherein the plurality of documents contain certain documents, each document of said certain documents containing at least one section that is not used by said search engine for recall and one or more sections that are used by said search engine for recall;

wherein ranking a plurality of documents includes ranking said plurality of documents based, at least in part, on the at least one section of said certain documents not used by said search engine to recall documents; and

wherein the method is performed by one or more computing devices.

44. Allegiant's systems, products, and processes, including at least the www.allegiantair.com website, do not have the specific functionality claimed by the '329 patent, including, for example, ranking a plurality of documents that contain at least one section that is not used by a search engine for recall, based on said section that is not used by a search engine to recall documents. Allegiant's www.allegiantair.com website does not recall "documents", including "documents" with sections, in the course of operation. Allegiant does not maintain data in any "documents." Further, when Allegiant's website uses data from third parties, the search is conducted on the third-parties' data instead of Allegiant's own data records.

45. An actual and justiciable controversy therefore exists between Allegiant and R2 as to whether Allegiant is infringing the '329 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '329 patent. Allegiant is entitled to a judgment declaring that it is not infringing the '329 patent.

## COUNT II: NON-INFRINGEMENT OF THE '610 PATENT

46. Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 45 as through fully stated herein.

47.      A true and correct copy of the '610 patent is attached hereto as Exhibit D.  The '610 patent is entitled "MapReduce for Distributed Database Processing."  The '610 patent issued on May 29, 2012, from an application filed October 5, 2006.  Ali Dasdan, Hung-Chih Yang, and Ruey-Lung Hsiao are the named inventors.  The '610 patent contains 46 claims reciting methods and systems for treating an input data set as a plurality of grouped sets to enhance the utility of MapReduce programming methodology.  On information and belief, the '610 patent is assigned to R2.

48.      Allegiant, through its systems, products, and processes, including at least the www.allegiantair.com website, is not infringing any claim of the '610 patent.

49.      For example, claim 1 of the '610 patent reads,

1. A method of processing data of a data set over a distributed system, wherein the data set comprises a plurality of data groups, the method comprising:

partitioning the data of each one of the data groups into a plurality of data partitions that each have a plurality of key-value pairs and providing each data partition to a selected one of a plurality of mapping functions that are each user-configurable to independently output a plurality of lists of values for each of a set of keys found in such map function's corresponding data partition to form corresponding intermediate data for that data group and identifiable to that data group, wherein the data of a first data group has a different schema than the data of a second data group and the data of the first data group is mapped differently than the data of the second data group so that different lists of values are output for the corresponding different intermediate data, wherein the different schema and corresponding different intermediate data have a key in common; and

reducing the intermediate data for the data groups to at least one output data group, including processing the intermediate data for each data group in a manner that is defined to correspond to that data group, so as to result in a merging of the corresponding different intermediate data based on the key in common,

wherein the mapping and reducing operations are performed by a distributed system.

50.      Allegiant's systems, products, and processes, including at least its information technology platforms, do not have the specific limitations of the '610 patent, including, for example, using MapReduce to process data over a distributed system or to process data from a plurality of groups having different schema over a computer system.  According to the '610 patent,

under a MapReduce programming methodology, "a 'map' function maps key-value pairs to new (intermediate) key-value pairs" and "[a] 'reduce' function represents all mapped (intermediate) key-value pairs sharing the same key to a single key-value pair or a list of values." Allegiant has never installed a system on its computer servers, such as Apache Hadoop or Apache Spark, that uses MapReduce or analogous algorithm to process data. Allegiant is not using a MapReduce program.

51.    An actual and justiciable controversy therefore exists between Allegiant and R2 as to whether Allegiant is infringing the '610 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '610 patent. Allegiant is entitled to a judgment declaring that it is not infringing the '610 patent.

## COUNT III: NON-INFRINGEMENT OF THE '029 PATENT

52.    Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 51 as through fully stated herein.

53.    A true and correct copy of the '029 patent is attached hereto as Exhibit E. The '029 patent is entitled "System and Method for Conditional Delivery of Messages." The '029 patent issued on November 6, 2012, from an application filed December 10, 2007. Marc Eliot Davis, Marco Boerries, Christopher William Higgins, Joseph James O'Sullivan, Ronald Martinez, and Robert Carter Trout are the named inventors. The '029 patent contains 20 claims, which recite methods, systems, and apparatus for delivering a message in accordance with delivery conditions. On information and belief, the '029 patent is assigned to R2.

54.    Allegiant, through its systems, products, and processes, including at least the www.allegiantair.com website and Allegiant's mobile application, is not infringing any claim of the '029 patent.

55.    For example, claim 1 of the '029 patent reads,

1. A method comprising:

receiving from a sender, at a computing device, a request to deliver a first message a recipient, the request identifying at least one delivery condition set by the sender;

identifying, via the computing device, at least one real world entity (RWE) and information object (IO) associated with the at least one delivery condition;

retrieving, at the computing device, W4 COMN data associated with each of the identified at least one RWE and IO, the W4 COMN data comprising social data, spatial data, temporal data and logical data available to the network associated with the at least one RWE and IO;

monitoring, via the computing device, the W4 COMN data for current information related to the at least one RWE and IO indicating to determine that the at least one delivery condition is met; and

delivering, over a network, the first message when the at least one delivery condition is met.

56.    Allegiant's systems, products, and processes, including at least the www.allegiantair.com website and Allegiant's mobile application, do not have the specific functionality of the '029 patent, including, for example, retrieving and monitoring W4 COMN data consisting of social data, spatial data, temporal data and logical data associated with a real world entity.  Allegiant does not monitor W4 COMN data.

57.    An actual and justiciable controversy therefore exists between Allegiant and R2 as to whether Allegiant is infringing the '029 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '029 patent.  Allegiant is entitled to a judgment declaring that it is not infringing the '029 patent.

### COUNT IV: NON-INFRINGEMENT OF THE '623 PATENT

58.    Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 57 as through fully stated herein.

59.    A true and correct copy of the '623 patent is attached hereto as Exhibit F.  The '623 patent is entitled "User Vacillation Detection and Response."  The '623 patent issued on September 3, 2013, from an application filed December 21, 2007.  Cameron Marlow, Sihem Amer-Yahia, Ronald J. Brachman, and Frederick K. Schmidt are the named inventors.  The '623 patent contains

23 claims directed to detecting when a user is in a state of vacillation and responding accordingly. On information and belief, the '623 patent is assigned to R2.

60.    Allegiant, through its systems, products, and processes, including www.allegiantair.com website, is not infringing any claim of the '623 patent.

61.    For example, claim 1 of the '623 patent reads,

1. A method for detecting and responding to user vacillation, comprising:

obtaining, by a processor, information associated with on-line behavior of a user;

automatically detecting, by the processor, a vacillation pattern relating to at least one object based on the obtained information;

constructing, by the processor, a vacillation event data structure based on the obtained information in response to detecting the vacillation pattern, the vacillation event data structure comprises information associated with the user, the at least one object, and a degree of vacillation demonstrated by the user with respect to the at least one object; and

providing, by the processor, information relating to the at least one object associated with the vacillation pattern to the user in response to detecting the vacillation pattern.

62.    Allegiant's systems, products, and processes, including at least the www.allegiantair.com website, do not have the specific functionality claimed by the '623 patent, including, for example, detecting user vacillation, recording relevant parameters regarding the vacillation, and responding accordingly. Allegiant does not run code to detect and respond to user vacillation.

63.    An actual and justiciable controversy therefore exists between Allegiant and R2 as to whether Allegiant is infringing the '623 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '623 patent. Allegiant is entitled to a judgment declaring that it is not infringing the '623 patent.

## COUNT V: NON-INFRINGEMENT OF THE '175 PATENT

64.    Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 63 as through fully stated herein.

65. A true and correct copy of the '175 patent is attached hereto as Exhibit G. The '175 patent is entitled "Generating an Individualized Web Page Template with Entities of a Web Page Publisher Organization Associated with Areas of the Template." The '175 patent issued on January 31, 2017, from an application filed September 13, 2012. Evgeniy Makeev, Jeff Budzinski, Scott Roy, Annie Cheng, and Timothy Daly are the named inventors. The '175 patent contains 20 claims directed to systems and methods that produce a template for a webpage. On information and belief, the '175 patent is assigned to R2.

66. Allegiant, through its systems, products, and processes, including at least the www.allegiantair.com website, is not infringing any claim of the '175 patent.

67. For example, claim 1 of the '175 patent reads,

1. A method, comprising:

> generating one or more signals or states, or a combination thereof, comprising a template for a web page individualized for a particular user utilizing at least in part a processor of a computing device;

> associating a plurality of areas of the template with a respective plurality of entities of a web page publisher organization utilizing at least in part the processor of the computing device, wherein one or more entities of the plurality of entities for one or more user areas of the plurality of areas are determined, implicitly or explicitly, or a combination thereof, at least in part by the particular user and another one or more entities of the plurality of entities for one or more system areas of the plurality of areas are determined at least in part on a periodic or rotating basis, or a combination thereof, by the web page publisher organization at least in part to expose the particular user to new entities or to updated content from existing entities, or a combination thereof; and

> selecting content for the plurality of areas of the template associated with the respective plurality of entities.

68. Allegiant's systems, products, and processes, including at least the www.allegiantair.com website, do not have the specific functionality described by the '175 patent, including, for example, generating a template for a web page, individualized for a particular user. Allegiant does not generate individualized web page templates for its customers. Instead the web page template used by Allegiant is the same for all its customers.

69.    An actual and justiciable controversy therefore exists between Allegiant and R2 as to whether Allegiant is infringing the '175 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '175 patent.  Allegiant is entitled to a judgment declaring that it is not infringing the '175 patent.

**COUNT VI: NON-INFRINGEMENT OF THE '272 PATENT**

70.    Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 69 as though fully set forth herein.

71.    A true and correct copy of the '272 patent is attached hereto as Exhibit H.  The '272 patent is entitled "System and Method of Automatically Sizing and Adapting a Widget to Available Space."  It issued on January 8, 2019, from an application filed September 28, 2007.  The '272 patent lists Joseph Andrew Magnani and William MacDonald White as its inventors.  The '272 patent contains 22 claims relating to systems and methods that determine in a browser-based widget, which elements to display, and at what scale, so as to make the most efficient use of its available space.  On information and belief, the '272 patent is assigned to R2.

72.    Allegiant, through its systems, products, and processes, including at least the www.allegiantair.com website, is not infringing any claim of the '272 patent.

73.    For example, claim 1 of the '272 patent reads,

1. A method comprising:

receiving structural data associated with a web page, the web page including a widget, the widget including a plurality of widget elements, wherein the structural data includes a size of a browser window used to display the web page;

accessing a constraint regarding a pre-determined number of the widget elements to display within the widget;

triggering during a display of the browser window and the plurality of widget elements a reduction in a size of the widget and a reduction in a plurality of sizes of the widget elements to display within the widget when the size of the browser window reduces;

removing one or more of the widget elements from being displayed within the widget after reducing the sizes of the widget elements, wherein said removing the one or more of the widget elements is performed until the constraint is achieved;

increasing a size of remaining one of the widget elements of the reduced size to fit within the widget of the reduced size upon achieving the constraint; and

sending data for displaying the widget.

74. Allegiant's systems, products, and processes, including at least the www.allegiantair.com website, do not have the specific functionality claimed by the '272 patent, including, for example, removing widget elements from being displayed within a widget on the www.allegiantair.com website after the sizes of widget elements have been reduced. The www.allegiantair.com website does not use "widget elements." To the extent that the appearance of input fields on the www.allegiantair.com website change when the size of a browser window changes, the input fields are not removed.

75. An actual and justiciable controversy therefore exists between Allegiant and R2 whether Allegiant is infringing the '272 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '272 patent. Allegiant is entitled to a judgment declaring that it is not infringing the '272 patent.

**COUNT VII: NON-INFRINGEMENT OF THE '157 PATENT**

76. Allegiant repeats and realleges each and every allegation contained in Paragraphs 1 through 75 as though fully set forth herein.

77. A true and correct copy of the '157 patent is attached hereto as Exhibit I. The '157 patent is entitled "System and Method for Intent-Driven Search Result Presentation." It issued on December 25, 2012, from an application filed on July 31, 2009. The '157 patent lists Robert Schulman as its inventor. The '157 patent contains 23 claims relating to systems and methods that enhance the effectiveness of information search, retrieval and presentation using user intent. On information and belief, the '157 patent is assigned to R2.

78. Allegiant, through its systems, products, and processes, including at least the

www.allegiantair.com website, is not infringing any claim of the '157 patent.

79. For example, claim 1 of the '157 patent reads,

1. A method comprising the steps of:

receiving, over a network, a query from a user, the query comprising at least one query token;

analyzing the query, using at least one computing device, to identify at least one query keyword;

determining, at least the one computing device, a plurality of intents from the at least one keyword, each of the plurality of intents indicates a type of information regarding the query keyword that is likely to be desired by a user submitting the query;

classifying the query, using the at least one computing device, into at least one of the plurality of intents;

identifying, using the at least one computing device, a plurality of data objects available over the network that match the at least one query keyword;

assigning, using the at least one computing device, at least one of the plurality of intents to at least some of the plurality of data objects;

ranking, using the at least one computing device, the plurality of data objects;

building a result, using the at least one computing device, using the ranked plurality of data objects, the result comprises a plurality of display entries, at least one display entry customized to a respective assigned intent is constructed for each of the ranked plurality of data objects; and

transmitting the result, over the network, to the user.

80. Allegiant's systems, products, and processes, including at least the www.allegiantair.com website, do not have the specific functionality claimed by the '157 patent, including, for example, determining a plurality of intents from at least one keyword identified by analyzing a query submitted by a user of the www.allegiantair.com website, and assigning one of the plurality of intents to at least some of a plurality of data objects matching the at least one keyword. The search results returned from queries run on the www.allegiantair.com website are categorized using predetermined categories.

81. An actual and justiciable controversy therefore exists between Allegiant and R2

whether Allegiant is infringing the '157 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '157 patent.  Allegiant is entitled to a judgment declaring that it is not infringing the '157 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allegiant respectfully requests that judgment be entered in its favor and against Defendant R2, and prays that the Court grant the following relief to Allegiant:

a.  A judgment declaring that Allegiant is not infringing the '329 patent;

b.  A judgment declaring that Allegiant is not infringing the '610 patent;

c.  A judgment declaring that Allegiant is not infringing the '029 patent;

d.  A judgment declaring that Allegiant is not infringing the '623 patent;

e.  A judgment declaring that Allegiant is not infringing the '175 patent;

f.  A judgment declaring that Allegiant is not infringing the '272 patent;

g.  A judgment declaring that Allegiant is not infringing the '157 patent;

h.  A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of the reasonable attorney's fees, costs, and expenses incurred by Allegiant in this action;

i.  An order awarding Allegiant its costs of suit incurred in this action; and

j.  Such other and future relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

**JURY TRIAL DEMAND**

Allegiant hereby demands a trial by jury of all issues and claims so triable.

Respectfully submitted,

Dated: May 24, 2022                                              LITTLER MENDELSON, P.C.

_____
Patrick H. Hicks, Bar No. 004632
Kelsey E. Stegall, Bar No. 14279
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway, #300
Las Vegas, Nevada  89169.5937
*Local Counsel*

Michael A. Oblon (To Apply *Pro Hac Vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Keith Davis (To Apply *Pro Hac Vice*)
JONES DAY
2727 North Harwood
Dallas, TX 75201

H. Albert Liou (To Apply *Pro Hac Vice*)
JONES DAY
717 Texas Avenue, Suite 3300
Houston, TX 77002

Attorneys for Plaintiff
ALLEGIANT TRAVEL COMPANY