# EXHIBIT "B"

Mutual Confidentiality Agreement between R2 Solutions LLC
and Allegiant Travel Company

Mutual Confidentiality Agreement between R2 Solutions LLC
and Allegiant Travel Company

# EXHIBIT "B"

## MUTUAL CONFIDENTIALITY AGREEMENT

**THIS MUTUAL CONFIDENTIALITY AGREEMENT** (the "Agreement") is effective as of the date of the last signature below (the "Effective Date") between **R2 SOLUTIONS LLC** ("R2"), a Texas limited liability company with an address at 6136 Frisco Sq. Blvd., Suite 400, Frisco, TX 75034; and **ALLEGIANT TRAVEL COMPANY** ("Allegiant"), a Nevada corporation with an address at 1201 Town Center Dr., Las Vegas, NV 89144, collectively referred to herein as the "Parties" and individually as a "Party".

1. Purpose. The Parties desire to enter into good faith licensing negotiations, during which either Party may disclose certain Confidential Information with the other Party (the "Discussions").

2. Definition of Confidential Information. "Confidential Information" means any information of a confidential nature provided by either Party (whether in oral, written, or digital form) including but not limited to, the Discussions and that which relates to research, product plans, products, services, customers, markets, software, developments, inventions, patents, evidence of patent use, processes, designs, drawings, engineering, hardware configuration information, claim charts, marketing or finances. Confidential Information does not include information, technical data or know-how which (i) is in the possession of the receiving Party at the time of disclosure as shown by the receiving Party's files and records prior to the time of disclosure, or (ii) prior to or after the time of disclosure becomes part of the public knowledge or literature, not as a result of any improper inaction or action of the receiving Party, (iii) is expressly approved by the disclosing Party, in writing, for release, or (iv) comes into the possession of the receiving Party from a third party that was not, to the recipient's knowledge, subject to any confidentiality restriction.

3. Non-Disclosure of Confidential Information. Each Party hereby agrees not to use or disclose any Confidential Information provided to it by or obtained by it from the other Party for any reason including its own use, as a basis for a declaratory judgment action, inter partes review, or for any purpose except to carry out the Discussions. Neither party will, except as required by law or court order, disclose any Confidential Information of the other Party to unrelated third parties or to employees, agents or professional advisors of the Party receiving Confidential Information, except employees, agents or professional advisors who are required to have the information in order to carry out the Discussions. Furthermore, neither the content of these confidential Discussions nor the fact that these confidential Discussions occurred may be disclosed to any third party, other than professional advisors of the Party and counsel representing any Party. Each Party agrees that it will take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the other Party in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Each Party agrees to notify the other in writing of any misuse or misappropriation or unauthorized disclosure of Confidential Information of the disclosing Party immediately after such misuse or misappropriation or unauthorized disclosure.

4. Maintenance of the Status Quo. The Parties expressly acknowledge and agree that this Agreement is not intended to substantively or adversely affect the rights of any of the Parties hereto as they exist on and before the execution of this Agreement. Rather, this Agreement is intended to maintain the status quo of the Parties, and to maintain whatever rights the Parties may have as to the matters addressed herein as of and before the execution of this Agreement, including the right the bring claims or lawsuits against the other Party during or after the Discussions.

5. Protection of Rights. The Parties further acknowledge and agree that notwithstanding any language herein which might otherwise be construed to the contrary, if it comes to their attention that this Agreement, as implemented, does not, as to any particular matter, provide maintenance of the status quo of the Parties and/or their rights as to the matters addressed herein as of and before the execution hereof, they will use their best efforts to correct that situation by taking such action or refraining to take such action as will reasonably provide for such maintenance of the status quo or protection of rights. The Parties agree that any language herein that is construed to affect the status quo of either Party is improper and the language in question will not affect the status quo of the Parties and or their rights as to the matters addressed herein.

6. Authority. Each Party further acknowledges, agrees, and represents to the other Party that such Party has the power and authority to enter into this Agreement and to take actions, or refrain or forebear from taking actions, as

described herein so as to implement the provisions and intent of this Agreement, and each such Party will use its best efforts to abide by the specific terms and stated intent of this Agreement so that the rights of the other Party are not permanently prejudiced.

7. <u>Patent or Copyright Infringement</u>. Nothing in this Agreement is intended to grant any rights under any patent or copyright of either Party, nor shall this Agreement grant either Party any rights in or to the other Party's Confidential Information, except the limited right to review and use such Confidential Information solely in connection with the Discussions between the Parties.

9. <u>Term/Term of Confidentiality</u>. This Agreement continues in effect after the Effective Date hereof and covers all future related Discussions between the Parties unless and until such Discussions are resolved by mutual consent or until a Party declares its intent in writing, that it no longer desires the protections afforded herein as to future communications only. Even in that instance, all the protections described in this Agreement that have already been afforded to prior Discussions will remain in effect and cannot be retroactively revoked or cancelled. With respect to the Confidential Information, the foregoing confidentiality commitments of each Party shall continue for two (2) years following the written notification by a Party to the other Party that it no longer desires the protections afforded herein.

10. <u>Remedies</u>. Each Party agrees that its obligations provided in this Agreement are necessary and reasonable in order to protect the disclosing Party and its business, and each Party expressly agrees that monetary damages would be inadequate to compensate the disclosing Party for any breach by the receiving Party of its covenants and agreements set forth in this Agreement. Accordingly, each Party agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to the disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the disclosing Party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the receiving Party, without the necessity of proving actual damages.

11. <u>Miscellaneous</u>. This Agreement shall be binding upon and for the benefit of the undersigned Parties, their successors and assigns, provided that Confidential Information of the disclosing Party may not be assigned without the prior written consent of the disclosing Party. Failure to enforce any provision of this Agreement by a Party shall not constitute a waiver of any other provision hereof by such Party.

12. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed original for all purposes. Facsimile copies of signatures shall be effective upon transmission, and the receipt of a facsimile copy containing a signature shall be effective and treated as an executed original.

**Agreed and Accepted by:**

R2 SOLUTIONS LLC

By: _Marc Booth_ (5D37D162388749A...)

Print Name: Marc Booth

Title: CEO

Date: 11/29/2021

ALLEGIANT TRAVEL COMPANY

By: _Laura Overton_

Print Name: _Lau Overton_

Title: General Counsel & VP of Legal Affairs

Date: 10/27/21