1
2
3
4
5
6

Joseph R. Ganley (5643)
Piers R. Tueller (14633)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
jganley@hutchlegal.com
ptueller@hutchlegal.com

7
8
9
10
11
12
13
14

Edward R. Nelson III (*Admitted Pro Hac Vice*)
Christopher G. Granaghan (*Admitted Pro Hac Vice*)
John P. Murphy (*Admitted Pro Hac Vice*)
Carder W. Brooks (*Admitted Pro Hac Vice*)
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, TX 76107
Telephone: (817) 377-9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

15

*Attorneys for Defendant R2 Solutions LLC*

16
17

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ALLEGIANT TRAVEL COMPANY, | **Case No. 2:22-cv-00828-CDS-BNW** |
| Plaintiff, | ▮ |
| v. | **DEFENDANT R2 SOLUTIONS LLC'S MOTION TO DISMISS PLAINTIFF ALLEGIANT TRAVEL COMPANY'S ORIGINAL COMPLAINT UNDER FRCP 12(b)(1) AND 12(b)(2)** |
| R2 SOLUTIONS LLC, | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

FACTUAL SUMMARY ............................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER ALLEGIANT'S
      DECLARATORY JUDGMENT ACTION. .......................................................................... 4

   A.    Legal Standard ............................................................................................................ 4

   B.    There Is No Case or Controversy. ............................................................................. 6

      i.    The Court should ignore information included in the Complaint in violation
            of the Agreement ................................................................................................. 6

      ii.   The parties' pre-Agreement discussions do not establish a case or controversy. ................. 7

      iii.  No case or controversy exists even when considering information disclosed in violation
            of the Agreement .................................................................................................. 9

II.   EVEN IF THE COURT CAN EXERCISE JURISDICTION UNDER THE
      DECLARATORY JUDGMENT ACT, IT SHOULD DECLINE TO DO SO. .............................. 13

   A.    Legal Standard .......................................................................................................... 13

   B.    The Court Should Dismiss the Case in its Discretion in Light of the Agreement. ................... 13

III.  THERE IS NO PERSONAL JURISDICTION OVER R2 IN NEVADA. ................................. 15

   A.    Legal Standard .......................................................................................................... 15

   B.    The Court Does Not Have General Jurisdiction Over R2. ....................................... 16

   C.    R2's Pre-Agreement Communications with Allegiant Do Not Constitute Minimum
         Contacts with Nevada. .............................................................................................. 17

D.    Exercising Personal Jurisdiction Over R2 Would Not Comport with Traditional
Notions of Fair Play and Substantial Justice. ............................................................. 18

CONCLUSION ................................................................................................................................ 20

1

2

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012).................................................................................passim

*Activevideo Networks, Inc. v. Trans Video Elecs. Ltd.*,
   975 F. Supp. 2d 1083 (N.D. Cal. 2013) .....................................................................passim

*Apple Inc. v. Zipit Wireless, Inc.*,
   30 F.4th 1368 (Fed. Cir. 2022)....................................................................................15, 18

*Applera Corp. v. Mich. Diagnostics, LLC*,
   594 F. Supp. 2d 150 (D. Mass. 2009) ................................................................................9

*Ass'n for Molecular Pathology v. United States PTO*,
   689 F.3d 1303 (Fed. Cir. 2012)......................................................................................5, 9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009).............................................................................16, 17, 18

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008)...........................................................................................15

*Baker v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*,
   116 Nev. 527, 999 P.2d 1020 (Nev. 2000)........................................................................16

*Bridgelux, Inc. v. Cree, Inc.*,
   U.S. Dist. LEXIS 53137 (N.D. Cal. July 9, 2007) ..........................................................8, 9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ......................................................................................................17, 18

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993)..................................................................................4, 7, 9

*Cepheid v. Roche Molecular Sys., Inc.*,
   2013 U.S. Dist. LEXIS 7446 (N.D. Cal. Jan. 17, 2013) ..............................................4, 6, 9

*Commc'ns Test Design, Inc. v. Contec, LLC*,
   952 F.3d 1356 (Fed. Cir. 2020)..........................................................................................13

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ..................................................................................................16, 17

*Dolby Labs., Inc. v. Intertrust Techs. Corp.*,
  2019 U.S. Dist. LEXIS 194022 (N.D. Cal. Nov. 6, 2019) ...................................................6

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ...................................................................................19

*Edison v. United States*,
  822 F.3d 510 (9th Cir. 2016) .......................................................................................4

*EMC Corp. v. Norand Corp.*,
  89 F.3d 807 (Fed. Cir. 1996) ..........................................................................13, 14, 15

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009) ................................................................................5, 6

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
  599 F.3d 1377 (Fed. Cir. 2010) ............................................................................10, 11

*MedImmune, Inc. v. Centocor, Inc.*,
  409 F.3d 1376 (Fed. Cir. 2005) ....................................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...............................................................................................4, 5

*Millenium Drilling Co. v. Beverly House-Meyers Revocable Tr.*,
  2015 U.S. Dist. LEXIS 124228 (D. Nev. Sep. 17, 2015) ..........................................15, 16

*New World Int'l, Inc. v. Ford Global Techs., LLC*,
  859 F.3d 1032 (Fed. Cir. 2018) ..............................................................................15, 16

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008) ..............................................................................9, 10

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) ........................................................................15, 16, 19

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007) ........................................................................6, 7, 8, 17

*Google, Inc. v. Traffic Info., LLC*,
  2010 U.S. Dist. LEXIS 27017 (D. Or. Feb. 2, 2010) ......................................................6

*Trimble Inc. v. PerDiemCo LLC*,
  997 F.3d 1147 (Fed. Cir. 2021) ..............................................................................18, 19

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ..............................................................................................16

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ...................................................................................................13

*Wooster Brush Co. v. Bercom Int'l, LLC*,
2008 U.S. Dist. LEXIS 29971 (N.D. Ohio Apr. 11, 2008) ......................................11

*World-Wide Vokswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ...................................................................................................21

*Wright Med. Tech., Inc. v. Osteonics Corp.*,
914 F. Supp. 1524 (W.D. Tenn. 1995) .............................................................10, 12

**Rules, Regulations and Statutes**

28 U.S.C. § 2201.................................................................................................................6, 15

28 U.S.C. § 2201(a)...............................................................................................................6

Article III of the U.S. Constitution ..................................................................................6, 18

Fed. R. Civ. P.12(b)(1)..........................................................................................................6

Fed. R. Civ. P.12(b)(2)..........................................................................................................17

Fed. R. Civ. P.12(f)...............................................................................................................9

NRS § 14.065........................................................................................................................17

1    Plaintiff Allegiant Travel Company ("Allegiant") filed a Complaint for Declaratory Judgment of

2    Non-Infringement (the "Complaint"). The Court lacks both subject-matter jurisdiction over the lawsuit

3    and personal jurisdiction over Defendant R2 Solutions, LLC ("R2"). R2 thus brings this motion seeking

4    dismissal of the Complaint under FRCP 12(b)(1) and 12(b)(2) (hereinafter, the "Motion").

5                                            **INTRODUCTION**

6    Allegiant's Complaint constitutes a blatant breach of a Mutual Confidentiality Agreement that the

7    parties signed in November 2021 (the "Agreement"). ECF 1.4. The Agreement prohibits Allegiant from

8    using any "Confidential Information" exchanged under the Agreement "for any reason including . . . ***as a***

9    ***basis for a declaratory judgment action***." *Id*. at ¶ 3 (emphasis added). Not six months after the effective

10   date of the Agreement, Allegiant filed the instant lawsuit based entirely on R2's Confidential

11   Information.

12   Allegiant's Complaint misuses R2's Confidential information in two ways. First, Allegiant's

13   Complaint dedicates numerous paragraphs to detailing the parties' post-Agreement, back-and-forth

14   confidential discussions (which are explicitly defined to be Confidential Information)—including

15   detailing the volume, nature, and substance of the parties' correspondence, discussions, and information

16   sharing—all to substantiate Allegiant's claim that subject-matter and personal jurisdiction are proper in

17   this Court. *See* ECF 1 at ¶ 10; *see also id.* at ¶¶ 12, 28-32, 38, 42, 44, 48, 50, 54, 56, 60, 62, 66, 68, 72,

18   74, 78, and 80. And, second, Allegiant's substantive counts for declaratory judgment are premised

19   entirely on R2's Confidential Information. Allegiant would have no knowledge of which patents to target

20   in the Complaint but for (i) R2's confidential selection and identification of the patents the parties

21   discussed, and (ii) R2's disclosure of its detailed infringement positions in claim charts shared with

22   Allegiant.

23   In essence, Allegiant purported to engage in good-faith licensing discussions with R2 by entering

24   into the Agreement. But this was not Allegiant's intent; rather, Allegiant misled R2, collected R2's

25   confidential information, and based its Complaint on the confidential information in breach of the

26

27

28

1   Agreement.[1] This was done for the singular purpose of gaining a procedural advantage in an otherwise
2   nonexistent conflict.

3          As established below, the Court should dismiss this lawsuit for three independent reasons. First,
4   the Court lacks subject-matter jurisdiction. The only information or material that Allegiant could possibly
5   rely upon to demonstrate a case or controversy is Confidential Information subject to the Agreement.
6   Such Confidential Information is properly excluded from the Court's analysis. But even if the Court
7   considers the Confidential Information, the very existence of the Agreement—and its express prohibition
8   on filing lawsuits based on Confidential Information—eliminates the possibility of a case or controversy.
9   Second, even if the Court is able to exercise jurisdiction, it should decline to do so under the Declaratory
10  Judgment Act. Exercising jurisdiction over a lawsuit brought in breach of the Agreement runs contrary to
11  public policy that encourages resolution of disputes outside of litigation. And declining to dismiss only
12  rewards Allegiant for its nefarious conduct. Third, as discussed below, the Court lacks personal
13  jurisdiction over R2.

14                                      **FACTUAL SUMMARY**

15         R2 was formed in Texas in 2016. Since then, R2 has conducted business activities, substantially
16  from Texas, including the management and licensing of its substantial patent portfolio of over 2,500 U.S.
17  patents (and 5,000 patents worldwide). Relative to its patent portfolio, both R2 and its predecessor-in-
18  interest have negotiated dozens of licenses without the need for litigation. Such is R2's preferred practice.
19  In fact, R2 has *never* litigated against a potential licensee with whom it has entered into a licensing NDA.
20  *See* Ex. A, Declaration of Craig Yudell ("Yudell Decl."), ¶ 4.

21         In pursuit of its licensing efforts, R2's President, Craig Yudell, wrote to Allegiant on June 1,
22  2021, offering the opportunity to discuss R2's portfolio. *See* Ex. B at 10. Thereafter, Evan Woolley,
23  another R2 representative, followed up with emails on October 18 and 25, 2021. *Id.* at 7-8. Allegiant
24  responded on October 25, 2021, and, over the course of the next several weeks, the parties negotiated,
25  and ultimately executed, the Agreement. *See id*. at 1-6; ECF 1.4. None of the correspondence between R2

26

27  _____
    [1] R2 has filed a breach of contract action in Texas, styled *R2 Solutions LLC v. Allegiant Travel Company*,
28  Case No. 4:22-cv-00537 (E.D. Tex. June 28, 2022).

1  and Allegiant prior to the Agreement (the "Non-Confidential Correspondence") discussed specific R2

2  patents, Allegiant's products or services, specific licensing terms, or any other confidential information.

3  *See* Ex. B. Rather, the Non-Confidential Correspondence was limited to R2's invitation to open licensing

4  discussions and the negotiation and execution of the Agreement itself. *Id.*

5      According to the Agreement, R2 and Allegiant "desire[d] to enter into good faith licensing

6  negotiations, during which either Party may disclose certain Confidential Information with the other

7  Party." ECF 1.4 at ¶ 1. The Agreement defines these "good faith licensing negotiations" as "the

8  Discussions." *Id.* The Agreement also broadly defines "Confidential Information" as "any information of

9  a confidential nature provided by either Party . . . including but not limited to, the Discussions and that

10 which relates to . . . patents, evidence of patent use, [and] . . . claim charts." *Id.* at ¶ 2. In order to

11 facilitate their negotiations, the parties "agree[d] not to use or disclose any Confidential Information

12 provided to it by or obtained by it from the other Party for any reason including its own use, as a basis for

13 a declaratory judgment action, inter partes review, or for any purpose except to carry out the

14 Discussions." *Id.* Indeed, the Agreement provides that "neither the content of these confidential

15 Discussions nor the fact that these confidential Discussions occurred may be disclosed to any third

16 party." *Id.*

17     After the Agreement's execution, R2 and Allegiant proceeded with licensing negotiations

18 protected by the Agreement. This included R2's disclosure of specific patents from its portfolio identified

19 by R2 as particularly relevant to Allegiant and its operations; R2's disclosure of claim charts that R2

20 prepared for Allegiant showing how specific Allegiant products and services are covered by those

21 specific R2 patents; and numerous email communications and phone conferences in which R2's patents,

22 claim charts, and licensing terms were addressed in depth. On May 24, 2022, not six months after the

23 Agreement was signed, Allegiant filed this Complaint seeking declarations that it does not infringe each

24 and every patent that R2 identified and discussed during the confidential discussions.

25

26

27

28

1

## ARGUMENT

2
**I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER ALLEGIANT'S**

3
**DECLARATORY JUDGMENT ACTION.**

4
### A.  Legal Standard

5
"The burden of establishing [subject-matter] jurisdiction in the district court lies with the party

6
seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.

7
Cir. 1993). A motion to dismiss under Rule 12(b)(1) may take the form of a "facial" challenge that

8
"challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations,"

9
or a "factual" challenge that "denies or controverts the pleader's allegations of jurisdiction" (i.e.,

10
challenges "the factual basis for the court's subject matter jurisdiction"). *Id.*; *see also Edison v. United*

11
*States*, 822 F.3d 510, 517 (9th Cir. 2016). In the case of a "factual" challenge, "the allegations in the

12
complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true for

13
purposes of the motion." *Cedars-Sinai*, 11 F.3d 1573 at 1583. "All other facts underlying the

14
controverted jurisdictional allegations are in dispute and are subject to factfinding by the district court,"

15
and the district court is to "review evidence extrinsic to the pleadings, including affidavits," such as those

16
attached to motions to dismiss. *Id.* at 1584; *see also Edison*, 822 F.3d at 517; *Activevideo Networks, Inc.*

17
*v. Trans Video Elecs. Ltd.*, 975 F. Supp. 2d 1083, 1085-86, n. 1 (N.D. Cal. 2013).

18
Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its

19
jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare

20
the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

21
"The phrase 'a case of actual controversy' in the [Declaratory Judgment] Act refers to the types of 'cases'

22
and 'controversies' that are justiciable under Article III of the U.S. Constitution." *3M Co. v. Avery*

23
*Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012). Thus, "[s]tanding to seek declaratory relief

24
[under the Act] requires justiciability under Article III." *Cepheid v. Roche Molecular Sys., Inc.*, No. C-

25
12-4411 EMC, 2013 U.S. Dist. LEXIS 7446, at *17 (N.D. Cal. Jan. 17, 2013) (citing *3M*, 673 F.3d at

26
1376; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "Basically, the question in each

27
case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy,

28

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal citations omitted).

Whether "a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M*, 673 F.3d at 1377 (quoting *MedImmune, Inc. v. Centocor, Inc*., 409 F.3d 1376, 1378 (Fed. Cir. 2005) (overruled on other grounds)). Under Federal Circuit law, a declaratory judgment plaintiff must "establish an injury in fact traceable to the patentee" by alleging both "(1) an affirmative act by the patentee related to the enforcement of his patent rights . . . , and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. United States PTO*, 689 F.3d 1303, 1318 (Fed. Cir. 2012) (internal citations omitted) (reversed on other grounds). Because Allegiant already implements the products at issue in its Complaint, the Court only need consider the first prong of this test. *Activevideo Networks*, 975 F. Supp. 2d at 1087 (internal citations omitted).

To show "an affirmative act by the patentee related to the enforcement of his patent rights," "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other party's product line.'" *3M*, 673 F.3d at 1378-79 (citing *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). "How much more is required is determined on a case-by-case analysis." *Id.* at 1379.

Courts consider a number of factors when determining whether the first prong is met, including: (1) "the strength of any threatening language in communications between the parties;" (2) "the depth and extent of infringement analysis conducted by the patent holder;" (3) "whether the patent holder imposed a deadline to respond;" (4) "any prior litigation between the parties;" (5) "the patent holder's history of enforcing the patent at issue;" (6) "whether the patent holder's threats have induced the alleged infringer to change its behavior;" (7) "the number of times the patent holder has contacted the alleged infringer;" (8) "whether the patent holder is simply a holding company with no source of income other than enforcing patent rights;" (9) "whether the patentee refused to give assurance it will not enforce its patent;" (10) "whether the patent holder has identified a specific patent and specific infringing products;" (11) "the extent of the patent holder's familiarity with the product prior to suit;" (12) "the length of time

1    that transpired after the patent holder asserted infringement;" and (13) "whether communications initiated

2    by the declaratory judgment plaintiff have the appearance of an attempt to create a controversy in

3    anticipation of filing suit." *Activevideo Networks,* 975 F. Supp. at 1087-88 (citing *Cepheid*, 2013 U.S.

4    Dist. LEXIS 7446, at *18-20).

5         In addition, courts often place special emphasis on whether a patent owner has proposed a

6    confidentiality agreement. The Federal Circuit itself has acknowledged that "[t]o avoid the risk of a

7    declaratory judgment action," patent owners can rely on "a suitable confidentiality agreement" in place

8    between the parties. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1375 n.1 (Fed. Cir.

9    2007); *see also 3M*, 673 F.3d 1372 at n.2. In cases finding subject-matter jurisdiction, courts have

10   accordingly highlighted when a patent owner fails to propose a confidentiality agreement. *See, e.g.*,

11   *Hewlett-Packard*, 587 F.3d at 1363; *SanDisk Corp.*, 480 F.3d at 1375 n.1; *Dolby Labs., Inc. v. Intertrust*

12   *Techs. Corp.*, No. 19-cv-03371-EMC, 2019 U.S. Dist. LEXIS 194022, at *16 (N.D. Cal. Nov. 6, 2019);

13   *Google, Inc. v. Traffic Info., LLC*, No. CV09-642-HU, 2010 U.S. Dist. LEXIS 27017, at *7-8 (D. Or.

14   Feb. 2, 2010).

15              **B.  There Is No Case or Controversy.**

16                   **i.  The Court should ignore information included in the Complaint in violation**

17                        **of the Agreement.**

18         Allegiant based its Complaint entirely on Confidential Information that it agreed not to use as the

19   basis for a declaratory judgment action. The Agreement broadly defines "Confidential Information as

20   "any information of a confidential nature provided by either Party . . . including, but not limited to, the

21   Discussions and that which relates to . . . products, . . . patents, . . . [and] claim charts." ECF 1.4 at ¶ 2.

22   The "Discussions" are the parties' "good faith licensing negotiations, during which either Party may

23   disclose certain Confidential Information with the other Party." *Id.* at ¶ 1. Under the Agreement, neither

24   party may use Confidential Information as the basis for a declaratory judgment action, nor may either

25   party disclose the content of the Discussions or the fact that they occurred. *Id.* at ¶¶ 2-3.

26         Allegiant disclosed and used Confidential Information throughout its Complaint. It relied on the

27   existence and content of the Discussions in an attempt to demonstrate that the Court has subject-matter

28

1  jurisdiction over this case, as well as personal jurisdiction over R2. ECF 1 at ¶¶ 12, 28-32. It also relied

2  entirely on the patents and products/services that R2 identified during the Discussions, and the detailed

3  claim charts that R2 shared with Allegiant, for determining which patents to make the subject of the

4  Complaint and for making its non-infringement assertions. *See id.* at ¶¶ 38, 42, 44, 48, 50, 54, 56, 60, 62,

5  66, 68, 72, 74, 78, 80. Indeed, given the size of R2's patent portfolio, Allegiant could not have identified

6  the patents to include in its Complaint had it not received confidential disclosures from R2—including

7  particularly the claim charts—during the parties' Discussions.

8       The Court should exclude all Confidential Information, including all of the negotiations and

9  information sharing between the parties after the date of the Agreement, from its jurisdictional analysis.

10  In *SanDisk*, the Federal Circuit specifically recognized that "[t]o avoid the risk of a declaratory judgment

11  action," patent owners can rely on "a suitable confidentiality agreement" in place between the parties.

12  *SanDisk*, 480 F.3d at 1375 n.1. And in *3M Co. v. Avery Dennison Corp.*, the Federal Circuit remanded

13  for the district court to determine whether "conversations were subject to a confidentiality agreement

14  precluding their use as a basis to support a declaratory judgment action," finding "the content of and

15  confidentiality of the discussions" as "central to the jurisdictional analysis." 673 F.3d at 1377-78. The

16  Federal Circuit has, thus, recognized that it is improper to consider information subject to a

17  confidentiality agreement when determining whether jurisdiction exists. This Court should not consider

18  information subject to the Agreement.[2]

19                   **ii.  The parties' pre-Agreement discussions do not establish a case or controversy.**

20       The discussions between the parties before the effective date of the Agreement (i.e., the Non-

21  Confidential Correspondence)—which is all that the Court should consider here—are insufficient to

22  establish a case or controversy.[3] Allegiant could not have identified patents to challenge based only on

23  the Non-Confidential Correspondence. Those communications were limited to R2's invitations to open

24

---

25  [2] R2 does not believe that a motion to strike under Rule 12(f) is necessary. To the extent that it is, R2
26  requests that the Court consider this sub-section to be a motion to strike immaterial matter from the
   complaint under Rule 12(f).

27  [3] Because this sub-section relies only on Allegiant's Complaint, it is a facial challenge to subject-matter
28  jurisdiction. *Cedars-Sinai*, 11 F.3d at 1583.

discussions regarding a "patent portfolio consisting of over 2,500 patents worldwide" and the negotiation of the Agreement. *See* Ex. B at 1-10. The parties did not identify or discuss any of R2's patents, Allegiant's implicated products or services, or any licensing terms. *See id.* If Allegiant could not identify patents to challenge, there could be no case or controversy. *See, e.g., Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 U.S. Dist. LEXIS 53137, at *24 (N.D. Cal. July 9, 2007).

But even if Allegiant could have somehow selected patents to include in its Complaint, none of Non-Confidential Correspondence constituted an affirmative act by R2 related to the enforcement of its patent rights. Essentially *every* factor that courts consider when determining whether a patentee has engaged in such affirmative acts weighs against finding subject-matter jurisdiction here. *See Activevideo,* 975 F. Supp. at 1087-88. Prior to the Agreement, R2 identified no patents or infringing products or services (factors 1, 2, 10, and 11). There was no insinuation that R2 might sue Allegiant, let alone a threat of litigation (factors 1, 2, and 6). R2 never imposed a deadline on Allegiant to respond (factor 3). R2 only contacted Allegiant three times before the parties began negotiating the Agreement (factor 7). And, while R2 has filed a number of infringement suits, it has a significant record of licensing companies outside of litigation (factor 5). R2 has never sued a company with which it has entered into a licensing confidentiality agreement, has never litigated with Allegiant, and has never litigated three of the patents Allegiant identifies in its Complaint (factors 4, 5, 7, and 8). Indeed, the parties' negotiation of the Agreement in this case proves that there is no case or controversy—the entire purpose of the Agreement was to avoid litigation by facilitating "good faith licensing negotiations." ECF 1.4 at ¶ 1; *see also Wright Med. Tech., Inc. v. Osteonics Corp.*, 914 F. Supp. 1524, 1531 (W.D. Tenn. 1995) (finding that "the fact that the two parties were in the process of negotiating a confidentiality agreement" was "fatal[ly] inconsistent[]" with an argument that a case or controversy existed).[4] In short, nothing that occurred

---

[4] In *Wright*, the court held that the fact that the parties were negotiating a confidentiality agreement was inconsistent with finding that the declaratory judgment plaintiff was in "reasonable apprehension of suit," which was the test for subject-matter jurisdiction at the time. 914 F. Supp. at 1531. While the test for the existence of subject-matter jurisdiction is no longer "reasonable apprehension of suit," *SanDisk*, 480 F.3d at 1380, the existence of a confidentiality agreement here is inconsistent with finding that R2 has taken affirmative acts related to enforcement of its patent rights, just as the existence of a confidentiality agreement was inconsistent with the plaintiff being in reasonable apprehension of suit in *Wright*.

1    between the parties prior to the Agreement could reasonably "establish an injury in fact" to Allegiant.

2    *Ass'n for Molecular Pathology*, 689 F.3d at 1318.

3          Courts have regularly refused to find subject-matter jurisdiction in similar situations. For

4    example, when "the defendants have not accused [the plaintiff] of infringement or asserted any rights to

5    [the plaintiff's product]," the Federal Circuit has found that no case or controversy exists. *Prasco, LLC v.*

6    *Medicis Pharm. Corp.*, 537 F.3d 1329, 1340 (Fed. Cir. 2008); *see also Bridgelux*, 2007 U.S. Dist. LEXIS

7    53137 at *24 (finding no case or controversy when "[t]here is no indication that anyone from [the

8    defendant] ever specifically identified [the plaintiff] as having infringed" specific patents"); *Applera*

9    *Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 158 (D. Mass. 2009) (finding no case or

10   controversy where patentee suggested review of all of its patents but did not identify any specific

11   patents). In fact, courts decline to exercise subject matter jurisdiction when patentees do much more than

12   R2 has done here. For instance, even where the defendant identified specific patents that it claimed were

13   "necessary for certain of [the plaintiff's] products" and the defendant imposed a response deadline that

14   the plaintiff missed, courts have declined to find subject-matter jurisdiction. *Cepheid*, 2013 U.S. Dist.

15   LEXIS 7446 at *29-33; *see also Wooster Brush Co. v. Bercom Int'l, LLC*, No. 5:06CV474, 2008 U.S.

16   Dist. LEXIS 29971, at *10 (N.D. Ohio Apr. 11, 2008) (finding no subject matter jurisdiction when the

17   defendant identified a specific patent, alleged to the plaintiff that the patent was infringed by the

18   plaintiff's product, and the plaintiff responded with a detailed non-infringement analysis). Consistent

19   with these cases, the Court should dismiss this case for lack of subject matter jurisdiction.

20                 **iii.  No case or controversy exists even when considering information disclosed in**

21                         **violation of the Agreement.**

22         Even if this Court considers Confidential Information, there is no case or controversy in light of

23   the Agreement itself.[5] The Agreement's very purpose was to facilitate the parties' good faith negotiations

24   and avoid litigation. ECF 1.4 at ¶ 1. In fact, the parties agreed that the Agreement preserved the status

25   quo existing prior to the date of the Agreement, when there was certainly no case or controversy. *Id.* at ¶¶

26

27   ─────────────

     [5] Because this sub-section relies on facts outside Allegiant's Complaint, it is a factual challenge to

28   subject-matter jurisdiction. *Cedars-Sinai*, 11 F.3d at 1583.

4-5. All of R2's actions after the Agreement were taken in pursuit of good faith negotiations and could not have changed the status quo between the parties; they were not affirmative acts related to the enforcement of R2's patent rights. The Agreement is, thus, "fatal[ly] inconsistent[]" with the existence of a case or controversy between the parties. *See Wright Med. Tech..*, 914 F. Supp. at 1531.

Allegiant's Complaint focuses heavily on R2's litigation against other parties. But the Federal Circuit has explicitly recognized that this factor is not dispositive—it must be considered in the context of the parties' interactions. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010); *Prasco*, 537 F.3d at 1341; *see also* ECF 1 at ¶¶ 5-6, 14-19, 33-37. The parties' interactions here show that there is no case or controversy, notwithstanding R2's other litigation. Throughout the parties' negotiations, R2 repeatedly emphasized its willingness to work cooperatively with Allegiant and that it did not intend to sue. *See, e.g.*, Ex. C (Confidential Discussions between R2 and Allegiant) at 1-3. █████████████████████████████████████████████

The tone and substance of the parties' exchanges bear the hallmarks of a collaborative negotiation

1   with any eye towards amicable resolution—not the strong, "threatening language" indicative of a

2   controversy. *Activevideo Networks,* 975 F. Supp. at 1088 (internal citations omitted). The parties entered

3   into a confidentiality agreement and exchanged information under it. ████████████████

4   ████████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████   R2 and Allegiant have never litigated before (factor 4). ████████████████

7   ████████████████████████████████████   And R2 has a significant licensing

8   business (factor 8). Given these circumstances, there is no case or controversy justifying subject-matter

9   jurisdiction over Allegiant's declaratory judgment action, even if post-Agreement communications are

10  considered by the Court.

11          Finally, Allegiant's efforts to contrive jurisdiction remove any doubt as to whether there is a case

12  or controversy. Courts often consider "whether communications initiated by the declaratory judgment

13  plaintiff have the appearance of an attempt to create a controversy in anticipation of filing suit."

14  *Activevideo*, 975 F. Supp. 2d at 1088; *see also Innovative Therapies*, 599 F.3d at 1380-81 (finding that

15  informal conversations initiated by the plaintiff were a "'sub rosa' effort to create jurisdiction" that "did

16  not produce a controversy of such 'immediacy and reality' as to require the district court to accept

17  declaratory jurisdiction"). That is exactly what Allegiant is trying to do here. Allegiant willingly agreed

18  that it would not use any information exchanged under the Agreement to file a declaratory judgment

19  action. But, not six months later, it filed this case in breach of the Agreement.

20          Allegiant appears to contend that filing this lawsuit was proper because R2 waived confidentiality

21  over all aspects of the parties' discussions except for the exact contents of R2's claim charts. Specifically,

22  Allegiant alleges that, during the parties' discussions, Allegiant asked R2 "to identify what was

23  confidential about R2's claim charts," and R2 "stat[ed] that the confidential information in R2's claim

24  charts consisted of its mapping of the patent claims onto Allegiant's technologies." ECF 1 at ¶¶ 30-31. In

25  hindsight, and in the context of the Complaint, Allegiant's question was an attempt to bait R2 into

26  waiving the protections of the Agreement and allow Allegiant to file a declaratory judgment action. For

27  this reason alone, the Court should find that there is no case or controversy. Regardless, Allegiant omits

28

1  key context.



11   That Allegiant has, all along, been attempting to contrive jurisdiction despite entering into the

12  Agreement is confirmed by Allegiant's actions since filing this case. R2 recently sued Allegiant for

13  breach of the Agreement in the Eastern District of Texas based on Allegiant's Nevada filing. After filing

14  the Texas case, R2 demanded that Allegiant dismiss this case because it was filed in breach of the

15  Agreement. *See* Ex. D (R2's Demand for Dismissal) at 1-2. In its letter, R2 never mentioned patent

16  infringement, instead focusing solely on Allegiant's breach of the Agreement. However, in response,

17  Allegiant's counsel stated that Allegiant would only dismiss this case if R2 provided Allegiant a covenant

18  not to sue for infringement of the patents in Allegiant's Complaint or otherwise stipulate to non-

19  infringement. Ex. E (Attorney Correspondence) at 2. Allegiant's counsel completely ignored R2's

20  position that Allegiant breached the Agreement by filing this case, as counsel for R2 pointed out. *See* Ex.

21  E at 1. After R2 responded, counsel for Allegiant stated suspiciously: "Your email confirms that R2

22  refuses to covenant not to sue Allegiant for patent infringement or stipulate to non-infringement." Ex. E

23  at 1. It is no coincidence that courts often consider "whether the patentee refuse[s] to give assurance its

24  will not enforce its patent" when determining whether declaratory judgment jurisdiction exists.

25  *Activevideo Networks,* 975 F. Supp. at 1088. Allegiant's counsel knows this and is transparently seeking

26  to create facts to support jurisdiction, just as Allegiant did before filing this case. Allegiant has failed to

27  do so. R2 has taken no affirmative steps related to enforcement of its patent rights against Allegiant. The

1   Court should thus dismiss this case for lack of subject-matter jurisdiction.

2   **II.    EVEN IF THE COURT CAN EXERCISE JURISDICTION UNDER THE**

3   **DECLARATORY JUDGMENT ACT, IT SHOULD DECLINE TO DO SO.**

4   **A.  Legal Standard**

5   "Even if there is a case or controversy, 'district courts possess discretion in determining whether

6   and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

7   satisfies subject matter jurisdictional prerequisites.'" *3M*, 673 F.3d at 1376 (quoting *Wilton v. Seven Falls*

8   *Co.*, 515 U.S. 277, 282 (1995)); *see also* 28 U.S.C. § 2201. "On its face, the [Declaratory Judgment Act]

9   provides that a court '*may* declare the rights and other legal relations of any interested party seeking such

10  declaration' . . . . The statute's textual commitment to discretion, and the breadth of leeway we have

11  always understood it to suggest, distinguish the declaratory judgment context from other areas of the law

12  in which concepts of discretion surface." *Wilton*, 515 U.S. at 286-87. "[A]s long as the district court acts

13  in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial

14  administration, the court has broad discretion to refuse to entertain a declaratory judgment action." *EMC*

15  *Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996).

16  The Federal Circuit has recognized in the declaratory judgment context that "it would be

17  inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of

18  promoting extrajudicial dispute resolution, and conservation of judicial resources." *EMC Corp.*, 89 F.3d

19  at 814 (internal citations omitted). Thus, it has held that using "the declaratory judgment complaint as a

20  tactical measure" to improve its "posture" is "not a purpose that the Declaratory Judgment Act was

21  designed to serve," and discretionary dismissal is appropriate is such situations. *EMC Corp.*, 89 F.3d at

22  815. Similarly, it has held that the existence of "ongoing negotiations" between the parties when an

23  action is filed supports discretionary dismissal. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d

24  1356, 1364 (Fed. Cir. 2020).

25  **B.  The Court Should Dismiss the Case in its Discretion in Light of the Agreement.**

26  Even if the Court could exercise subject matter jurisdiction, undisputed facts strongly support

27  discretionary dismissal. Allegiant purposefully breached the Agreement in order to bring this action.

28

There can be no real dispute that "Confidential Information"—explicitly defined to include the "Discussions," patents, products, and claim charts—was used by Allegiant as the basis for this declaratory judgment Action. *See* ECF 1.4. Indeed, the action could not possibly have been brought otherwise. Allegiant could not have selected the patents from among the thousands of patents owned by R2 to include in its Complaint and could not have developed its essential non-infringement positions absent the Confidential Information provided by R2.

Moreover, there can be no real dispute that Allegiant improperly disclosed both "the fact that the[] confidential Discussions occurred" and the "content of the[] confidential Discussions" in its Complaint in contravention of the Agreement. ECF 1.4. To this end, Paragraphs 27-32 of the Complaint disclose that the Discussions occurred, as well as what was discussed, and the Complaint relies on those paragraphs as the basis for subject-matter and personal jurisdiction. ECF 1.

Allowing Allegiant to proceed with a declaratory judgment action in these circumstances is contrary to "the sound policy of promoting extrajudicial dispute resolution." *See EMC Corp.*, 89 F.3d at 814 (internal citations omitted). The entire purpose of the Agreement (as with all licensing confidentiality agreements) is to *avoid* litigation. And, as Allegiant knew before filing its Complaint, R2 had *never* before litigated against a potential licensee with whom it entered into a licensing NDA. *See* Ex. A, Yudell Decl., ¶ 4; Ex. B at 2-3. Thus, exercising jurisdiction over this case undermines the very purpose of confidentiality and non-disclosure agreements. If such agreements do not actually prohibit a potential licensee from bringing a declaratory judgment action, patent owners will be discouraged from entering into them. Instead, patent owners will choose to forego attempting to license patents outside of litigation lest they find themselves in unwanted litigation in a forum with which they have no meaningful connection. They will instead file lawsuits first and negotiate later, burdening courts accordingly. Further, when patent owners enter into licensing NDAs and pursue licensing discussions outside of litigation, only to become unwitting declaratory judgment defendants, the judiciary can be doubly burdened. As is the case here, the declaratory judgment action is being litigated in the putative infringer's chosen forum, and the breach of contract action is being litigated in the patent owner's chosen forum.

Moreover, allowing Allegiant's case to proceed in this Court would establish bad precedent that

1   incentivizes gamesmanship. Potential licensees would be encouraged to enter into NDAs with patent

2   holders, gather as much information as possible under the guise of good-faith negotiations, and then file

3   suit based on gathered information in breach of the NDA, all in an effort to gain the upper hand in

4   negotiations. Such is precisely what happened here. Allegiant strung R2 along with a confidentiality

5   agreement, collected information from R2, conducted sham negotiations, and filed suit not even two

6   weeks after R2 responded to Allegiant's first substantive remarks. Allegiant is now demanding a

7   covenant not to sue or stipulation of non-infringement.

8       In summary, Allegiant used the Agreement to obtain information serving as the foundation for its

9   declaratory judgment action and is now using the action as leverage to obtain what amounts to a royalty-

10  free license. This type of behavior is exactly what the Federal Circuit has cautioned against. *EMC Corp.*,

11  89 F.3d at 815 ("[T]he district court could properly view the declaratory judgment complaint as a tactical

12  measure filed in order to improve EMC's posture in the ongoing negotiations—not a purpose that the

13  Declaratory Judgment Act was designed to serve."). The Court should not reward Allegiant's behavior

14  and should dismiss this case.

15  **III.    THERE IS NO PERSONAL JURISDICTION OVER R2 IN NEVADA.**

16          **A.  Legal Standard.**

17      Whether a court can exercise personal jurisdiction over a patentee in a declaratory judgment

18  action is governed by Federal Circuit law. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d

19  1355, 1358 (Fed. Cir. 1998). In reviewing a Rule 12(b)(2) dismissal for lack of personal jurisdiction,

20  courts "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual

21  conflicts . . . in the plaintiff's favor." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329

22  (Fed. Cir. 2008); *see also Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022). "A

23  court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits

24  service of process and the assertion of personal jurisdiction comports with due process." *New World Int'l,*

25  *Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2018); *see also Millenium Drilling Co.*

26  *v. Beverly House-Meyers Revocable Tr.*, No. 2:12-cv-00462-MMD-CWH, 2015 U.S. Dist. LEXIS

27  124228, at *8 (D. Nev. Sep. 17, 2015). Because Nevada's long-arm statute (NRS § 14.065) "'reaches the

28

1  limits of due process set by the United States Constitution,'" the Court need only determine whether

2  exercising jurisdiction over R2 comports with due process. *Millenium Drilling Co.*, 2015 U.S. Dist.

3  LEXIS 124228, at *8 (quoting *Baker v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 116 Nev. 527,

4  999 P.2d 1020, 1023 (Nev. 2000)); *see also Red Wing Shoe Co.*, 148 F.3d at 1358.

5        To comport with due process, "the nonresident defendant must have certain minimum contacts

6  with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and

7  substantial justice." *New World*, 859 F.3d at 1037 (internal quotation marks omitted) (alterations in

8  original). There are two forms of personal jurisdiction: general jurisdiction and specific jurisdiction.

9  "Under general jurisdiction, a district court can hear any and all claims against [out-of-state defendants]

10  when their affiliations with the State are so continuous and systematic as to render them essentially at

11  home in the forum State." *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017)

12  (internal quotation marks omitted) (alteration in original) (quoting *Daimler AG v. Bauman*, 134 S. Ct.

13  746, 749 (2014)). "Specific jurisdiction instead 'focuses on the relationship among the defendant, the

14  forum, and the litigation.'" *Id.* (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). Courts apply a

15  three-part test to determine whether a defendant is subject to personal jurisdiction: "(1) whether the

16  defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of

17  or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is

18  reasonable and fair." *Id.* The first two factors correspond with the "minimum contacts" prong of the due

19  process analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the

20  analysis. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009) (internal

21  citations omitted).

22        **B.  The Court Does Not Have General Jurisdiction Over R2.**

23        It is unclear from the Complaint whether Allegiant alleges that this Court has general or specific

24  jurisdiction over R2. In any event, Allegiant has failed to establish that this Court has general jurisdiction.

25  General jurisdiction is only appropriate when "a corporation engages in a substantial, continuous, and

26  systematic course of business" in a forum, meaning that "[w]ith respect to a corporation, the place

27  of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.'"

28

1    *Daimler*, 571 U.S. at 137 (internal citations omitted and alternations in original). Only in an 'exceptional

2    case' will general jurisdiction be available anywhere else. *Id.* at 139, n. 19. The *only* contacts that

3    Allegiant identifies in its Complaint are R2's contacts with Allegiant. R2 is not incorporated in Nevada

4    and does not have a place of business in the state. *See* Ex. A, Yudell Decl., ¶ 6.   R2 thus does not

5    "engage[] in a substantial, continuous, and systematic course of business" in Nevada. *Daimler*, 571 U.S.

6    at 137. There is therefore no general jurisdiction over R2 in Nevada.

7         **C.  R2's Pre-Agreement Communications with Allegiant Do Not Constitute Minimum**

8              **Contacts with Nevada.**

9         As with the Court's subject-matter jurisdiction analysis, the Court's personal jurisdiction analysis

10   should exclude all information that Allegiant relies upon in breach of the Agreement. Allegiant agreed

11   that it would not use information covered by the Agreement "for any purpose except to carry out" the

12   parties' negotiations, including "as a basis for a declaratory judgment action." ECF 1.4 at ¶ 3. Yet

13   Allegiant relies extensively on post-Agreement communications and exchanges between the parties to

14   show that R2 "has established extensive contacts with this District." *See* ECF 1 at 4, 7-8. Allegiant

15   should not be permitted to rely on information it explicitly agreed not to rely upon in order to shop for its

16   preferred forum. Allowing it to do so would undermine the Federal Circuit's promise that parties can

17   "avoid the risk of a declaratory judgment action . . . [with] a suitable confidentiality agreement."

18   *SanDisk*, 480 F.3d at 1375 n.1.

19        The only contacts not subject to the Agreement that Allegiant relies upon to establish personal

20   jurisdiction are the parties' pre-Agreement communications (i.e., the Non-Confidential Correspondence).

21   Those communications do not establish personal jurisdiction. Only contacts that "arise[] out of or relate[]

22   to" the asserted causes of action can establish personal jurisdiction. *Autogenomics, Inc.*, 566 F.3d at 1017

23   (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The parties' Non-Confidential

24   Correspondence does not relate to Allegiant's request for declaratory judgments of non-infringement

25   because it does not mention any specific patents, claims, products, infringement positions, or any other

26   information or material that could give rise to this action. The communications instead consisted only of

27   R2's invitations to discuss R2's patent portfolio and the parties' negotiation of the Agreement.

28

The parties' Non-Confidential Correspondence is much less extensive than other situations where the Federal Circuit has declined to find specific personal jurisdiction. For example, in *Autogenomics*, "the defendant-patentee sent a notice letter to the declaratory-judgment plaintiff, the plaintiff 'expressed interest in taking a license,' and two of the patentee's representatives flew to California (the forum state) to meet with the plaintiff's representatives. *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1376 ( Fed. Cir. 2022) (quoting *Autogenomics, Inc.*, 566 F.3d at 1014-15). "Based on the facts of the case and the nature of the specific communications at hand, [the Federal Circuit] determined that the plaintiff 'failed to allege sufficient activities "relat[ing] to the validity and enforceability of the patent" in addition to the cease-and-desist communications' to demonstrate minimum contacts." *Id.* The contacts in *Autogenomics* are much more substantial than those here. Prior the Agreement, R2 never sent a "cease and desist" communication to Allegiant, and R2 and Allegiant had not begun discussing license specifics, much less Allegiant's level of interest. R2 never traveled to Nevada to negotiate a license or took any other actions "relat[ing] to the validity and enforceability of the patent" from which specific personal jurisdiction could arise. *Id.*; *see* Ex. A, Yudell Decl., ¶ 6.  Indeed, negotiations of the Agreement, and the Agreement itself, are not contacts that relate to "validity and enforceability" of the patents. Nor are R2's mere invitations to discuss a license. The parties' Non-Confidential Correspondence thus does not support personal jurisdiction over R2.

### D.  Exercising Personal Jurisdiction Over R2 Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Even if there are sufficient minimum contacts between R2 and this state, exercising personal jurisdiction over R2 would not be "fair and reasonable." *Autogenomics, Inc.*, 566 F.3d 1019. When determining whether exercising personal jurisdiction is fair and reasonable, courts consider: (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1153 (Fed. Cir. 2021) (citing *Burger King,* 471 U.S. at 477). Each of these factors weighs against

1   personal jurisdiction.

2       Most importantly, Nevada shares an interest with all other states in enforcing valid contracts,

3   precluding gamesmanship, and encouraging extrajudicial settlement. As discussed above, allowing this

4   case to proceed would eviscerate those policies. R2 entered into the Agreement with Allegiant in reliance

5   on these policies, with the expectation that it would not be drawn into an anticipatory lawsuit in a forum

6   with which it has no connection. In other words, the Agreement provided R2 assurances that it would not

7   be "haled into court" in Nevada (or anywhere). *Red Wing Shoe*, 148 F.3d at 1359 (quoting *World-Wide*

8   *Vokswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Exercising jurisdiction here would undermine

9   R2's reasonable expectations.

10      The other four factors also weigh in R2's favor. Requiring R2 to litigate in Nevada places a

11  substantial, unexpected burden on R2. R2 has no presence in Nevada, no employees in Nevada, no

12  witnesses in Nevada, no history of litigating in Nevada, and overall no contacts with Nevada outside of

13  Allegiant itself. *See, e.g., Trimble*, 997 F.3d at 1158. While Nevada may have an interest in "protecting

14  its residents from unwarranted claims of patent infringement" (*Trimble*, 997 F.3d at 1158) and "providing

15  a forum for its residents and citizens who are tortiously injured" (*Dole Food Co. v. Watts*, 303 F.3d 1104,

16  1115-16 (9th Cir. 2002)), it is not Allegiant that has been injured here—it is R2. R2 did not assault

17  Allegiant with "unwarranted claims of patent infringement," but instead sought to discuss a license

18  within the confines of a confidentiality agreement that would enable the parties to negotiate without the

19  threat of litigation. *Trimble*, 997 F.3d at 1158. Allegiant played along, only to purposefully breach the

20  Agreement by filing this case. Allegiant cannot argue that this case is necessary for it to "obtain[]

21  convenient and effective relief" because there is nothing that Allegiant needs relief from. *Id*. Nor does

22  this case promote the "the interstate judicial system's interest in obtaining the efficient resolution of

23  controversies." *Id.* When Allegiant filed suit, the parties were in the midst of substantive negotiations. R2

24  believed that the parties were collaboratively working toward an agreement, and that there was no

25  controversy for the courts to resolve, let alone a court in a distant forum. Thus, at the very least, the Court

26  should find that exercising personal jurisdiction over R2 does not comport with "fair play and substantial

27  justice" and should dismiss this case.

28

**CONCLUSION**

Allegiant deliberately breached the Agreement when it filed its Complaint. The existence of the Agreement, in which Allegiant expressly committed that it would not use any information exchanged under the Agreement as the basis for a declaratory judgment action, precludes the exercise of subject-matter jurisdiction in this case. Even if the Court finds that it may nevertheless exercise subject-matter jurisdiction, it should exercise its discretion to dismiss the case in light of Allegiant's egregious conduct. Finally, R2 does not have minimum contacts with Nevada, and exercising personal jurisdiction over R2 does not comport with traditional notions of fair play and substantial justice. For these reasons, and the reasons set forth throughout this Motion, Allegiant's Complaint warrants dismissal.

Dated:  July 14, 2022                                    Respectfully submitted,


                                                        */s/ Edward R. Nelson III*
                                                        Joseph R. Ganley (5643)
                                                        Piers R. Tueller (14633)
                                                        HUTCHISON & STEFFEN, PLLC
                                                        Peccole Professional Park
                                                        10080 West Alta Drive, Suite 200
                                                        Las Vegas, Nevada 89145
                                                        jganley@hutchlegal.com
                                                        ptueller@hutchlegal.com

                                                        Edward R. Nelson III (*Admitted Pro Hac Vice*)
                                                        Christopher G. Granaghan (*Admitted Pro Hac Vice*)
                                                        John P. Murphy (*Admitted Pro Hac Vice*)
                                                        Carder W. Brooks (*Admitted Pro Hac Vice*)
                                                        NELSON BUMGARDNER CONROY PC
                                                        3131 West 7th Street, Suite 300
                                                        Fort Worth, TX 76107
                                                        Telephone: (817) 377-9111
                                                        ed@nelbum.com
                                                        chris@nelbum.com
                                                        murphy@nelbum.com
                                                        carder@nelbum.com

                                                        *ATTORNEYS FOR DEFENDANT*
                                                        *R2 SOLUTIONS LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2022, I electronically filed the foregoing document under seal with the Clerk of the Court for United States District Court for the District of Nevada using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via electronic mail and paper form to all participants in the case who are registered CM/ECF users.

*/s/ Edward R. Nelson III*